# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 15-51222 (JAM) |
| | ) | | |
| DANIEL MCGURK and PETRA ALARCON GARCETE | ) ) | CHAPTER | 7 |
| | ) | | |
| DEBTORS. | ) | | |
| W.R. BERKLEY CORPORATION | ) | ADV. PRO. NO. | 15-05066 |
| | ) | | |
| PLAINTIFF, | ) | ECF Nos. | 10, 13 |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| DANIEL MCGURK | ) | | |
| | ) | | |
| DEFENDANT. | ) | | |

## APPEARANCES

Bejamin H. Nissan, Esq.                    Attorney for the Plaintiff
Thomas J. O'Neill
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103

James M. Nugent, Esq.                     Attorney for the Defendant
Harlow, Adams, and Friedman
One New Haven Ave
Milford, CT 06460

## **MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT**

**I.    Introduction**

W.R. Berkley Corporation (the "Plaintiff" or "WRBC"), filed a two count complaint seeking to have a debt owed to it by the debtor, Daniel McGurk (the "Defendant"), deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (a)(6) (the "Complaint").  On July 15,

2016, the Plaintiff moved for summary judgment on Count Two of the Complaint in reliance upon the allegedly preclusive effect of a pre-petition decision of the Connecticut Superior Court. (ECF Adv. No. 10).[1]  On July 15, 2016, the Defendant filed a motion for summary judgment with respect to both counts of the Complaint (ECF Adv. No. 13).  For the reasons discussed below, the Plaintiff's motion is **GRANTED** and the Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

## II.    Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings pursuant to 28 U.S.C. § 1334(b).  The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the District Court's General Order of Reference dated September 21, 1984.  This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

## III.   Undisputed Facts

A review of the Plaintiffs' motion for summary judgment and documents appended thereto, the Defendant's motion for summary judgment and documents appended thereto, the parties' Rule 56(a) Statements, the supplemental briefs, and the examination of the record in the bankruptcy case and adversary proceeding establishes the following undisputed facts for the purposes of the pending motions for summary judgment.  The undisputed facts appear in a thirty-five page Memorandum of Decision issued on July 23, 2015, after a multi-day evidentiary hearing in the Connecticut Superior Court (the "Superior Court Decision").  Both the Plaintiff and the Defendant attached the Superior Court Decision as Exhibit A to their respective motions for summary judgment.

---

[1] All references to documents appearing on the docket of the instant adversary proceeding will appear as "ECF Adv. No.____".

1. The Defendant and his brother, Michael McGurk, operated a business under the trade name Classic Sportswear and Design ("Classic Sportswear"), which was in the business of selling customized promotional products. Superior Court Decision at 1, 12.

2. In or around August 2011, WRBC entered into discussions with Classic Sportswear regarding the design and delivery of umbrellas for a corporate event at the end of January or early February 2012. *Id*. at 2, 7.

3. The Defendant was the Director of Marketing and WRBC's primary contact. *Id*. at 12.

4. On or about August 31, 2011, Classic Sportswear delivered a sample umbrella to WRBC, complete with logo on the outside and handle, and an image on the inside of the umbrella. Based on the sample, WRBC ordered 1,000 umbrellas. *Id*. at 2-3.

5. After placing the order, the Defendant told WRBC that it needed to be paid in full for the order to be deemed final. WRBC paid the full contract price of $61,204.43 by check dated October 12, 2011. *Id*. at 3.

6. As soon as the check was received from WRBC, the Defendant and his brother spent the money on ongoing and overdue expenses, including draws by and on behalf of the Defendant, his brother, and their family members. *Id*. at 4 and 8.

7. At the time WRBC placed the order, Defendant and his brother were in a dispute with their supplier. The supplier would not fulfill any orders until the dispute was resolved. *Id.* at 7-8, 15.

8. The Defendant and his brother "strung" WRBC along. *Id*. at 32. The conduct of the Defendant and his brother prevented WRBC from cancelling the contract, getting its money

3

back, and from obtaining the promotional items from another source in time for the February event.  *Id.* at 32.

9.   The Defendant and his brother engaged in misrepresentations and concealment regarding their inability to timely satisfy WRBC's order. (*Id.* at 26).

10.   The Defendant and his brother engaged in a pattern of practice that "was not bait-and-switch; it was bait (period), with no conceivable end-game other than a total disaster such as ensued" and that "the conduct of ..." the Defendant and his brother, in dealing with WRBC "…was unethical, immoral and unscrupulous."  *Id.* at 25-26.

11.   On February 14, 2012, WRBC filed an action in the Connecticut Superior Court, FST-CV-12-6012918-S.  The operative complaint asserted claims against the Defendant and his brother for, among other things, misrepresentation, bad faith, fraud, and violations of Conn. Gen. Stat. §40-110b, *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA").

12.   On July 23, 2015, the Connecticut Superior Court ruled that it had "little difficulty finding that Debtor's conduct was unethical, immoral, unscrupulous, and likely to cause substantial injury…" and entered a judgment against the Defendant and his brother for a violation of CUTPA, including an award of punitive damages and statutory attorneys' fees to be considered at a later time.  Superior Court Decision at 26-27.   The amount of the judgment was $61,204.43 in compensatory damages, $5,000.00 in punitive damages, pre-judgment interest at 6% commencing on February 20, 2012, costs to be taxed, and attorneys' fees to be determined at a hearing to be held in the Connecticut Superior Court.  Nominal damages of $100.00 were also awarded for claims of intentional misrepresentation, fraud, aiding and abetting fraud, and civil conspiracy.  *Id.* at 35.

## V. Discussion

### A. Summary Judgment Standard

"Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by the Fed. R. Bankr. P. 7056, directs that '[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 746 (Bankr. D. Conn. 2014) (internal quotations and alteration in original), quoting Fed. R. Civ. P. 56(a). When considering a motion for summary judgment "the judge's function . . . is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Furthermore, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Flaherty v. Lang*, 199 F.3d 607, 615 (2d Cir. 1999), quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994).

At the summary judgment stage, the moving party bears the burden of showing that there are no material facts in dispute and the court is to draw all reasonable inferences, and resolve all ambiguities, in favor of the non-moving party. *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has met its burden, in order to defeat the motion, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *In re Affinity Health Care, Mgmt., Inc.*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013), quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "[A] non-moving party must point to more than a mere 'scintilla' of evidence in order to defeat a motion for summary judgment." *Id.*, quoting *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir. 2008).

5

### B. General Collateral Estoppel Standards

In their respective motions for summary judgment, both parties argue that the Superior Court Decision should be given preclusive effect in this adversary proceeding. "It is well settled that preclusion principles apply in bankruptcy proceedings." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006); *In re Delaney*, 504 B.R. 738 (Bankr. D. Conn. 2014), citing, *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In cases "[w]here the debt in question is a judgment entered after a claim of fraud has been adjudicated, either party to a subsequent adversary proceeding on nondischargeability can invoke collateral estoppel to establish that the debt is or is not dischargeable under the relevant nondischargeability provision." *Giaimo v. DeTrano (In re DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003); *accord, Control Module, Inc. v. Dybowksi (In re John C. Dybowski)*, No. 07-21152, 2012 WL 1945503 at *8 (Bankr. D. Conn. May 30, 2012). "When determining the preclusive effect of a state court judgment, a court must apply the preclusive law of the rendering state." *Faraday v. Blanchette*, 596 F. Supp. 2d 508 (D. Conn. 2009), citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). As the Connecticut Supreme Court stated in *Cumberland Farms, Inc. v. Town of Groton*, 262 Conn. 45, 58, 808 A.2d 1107 (2002), under Connecticut law "[i]ssue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." The court in *Cumberland Farms* went on to further explain that in Connecticut,

> . . . collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim . . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined . . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered . . . . If an issue has been determined, but the judgment is not

6

dependent upon the determination of that issue, the parties may relitigate the issue in a subsequent action.

*Id.* at 58, n. 17; 2012 WL 1945503 (Bankr. D. Conn. May 30, 2012) at *9. Additionally, in Connecticut "[f]or collateral estoppel to apply, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding." *State v. Joyner*, 255 Conn. 477, 490, 774 A.2d 927 (2001) (internal quotation marks omitted). Lastly, under Connecticut law, it is clearly established that "[t]he proper function of [jury] interrogatories is to provide a means by which the jury may record the findings of fact that form the basis of their verdict." *Pagani v. BT II, Ltd. P'ship*, 24 Conn. App. 739, 752, 592 A.2d 397 (1991), *cert. dismissed*, 220 Conn. 902, 593 A.2d 968 (1991).

**C. The Preclusive Effect of the Superior Court Decision on the Plaintiff's Motion for Summary Judgment**

As noted above, the Superior Court Decision entered a judgment against the Defendant and his brother on the CUTPA claim, the intentional misrepresentation claim, and the fraud claim. The Plaintiff asserts that under collateral estoppel principles, summary judgment should enter in its favor on the Count Two § 523(a)(6) cause of action due to the entry judgment on the CUTPA claim. The Plaintiff argues that the debt is nondischargeable because it resulted from a willful and malicious injury by the Defendant and summary judgment should enter in its favor. The Defendant opposes this argument and asserts that the entry of summary judgment is inappropriate.

**Collateral Estoppel Effect of the Superior Court Decision on the Count Two § 523(a)(6) cause of action**

In general, a discharge is not available for a debt resulting from a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6); *see also Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 748 (Bankr. D. Conn. 2014). The

creditor bears the burden of showing which part of a judgment is based upon willful and malicious injury. 4 Collier on Bankruptcy ¶ 523.12[5], p. 523-97 (Alan N. Resnick & Henry J. Sommer eds.,16th ed. rev. 2014), citing *United States Credit Bureau, Inc. v. Digoras*, 169 Cal. App. 2d 673 (1959). As is true in any dischargeability action, a creditor seeking to establish nondischargeability under this section must do so by a preponderance of the evidence. *Delaney*, 504 B.R. at 748; *Orr v. Marcella (In re Marcella)*, 463 B.R. 212, 219 (Bankr. D. Conn. 2011).

### i. Identity of Issues

Application of collateral estoppel with regard to the CUTPA claim requires an identity of issues between the Superior Court Decision and this action under 11 U.S.C. § 523(a)(6). In *Crestwood James, LLC v. Persechino (In re Persechino)*, 423 B.R. 1 (Bankr. D. Conn. 2010), a court in this district tackled an "identity of issues" determination for collateral estoppel purposes regarding a prior state court judgment in the context of a § 523(a)(6) dischargeability action. When confronted with making such an "identity of issues" determination in *Persechino*, the court first referred to the underlying complaint in the prior state court action. *Id*. at 4. The court next engaged in a careful comparison between the allegations made and legal standards applied by the state court in the prior case and the allegations made and legal standards applicable to the issues before the court in the current matter. *Id.* at 4-5.

The Court has thoroughly reviewed the Superior Court Decision. It is true that there are factual and legal distinctions that differentiate this case from *Persechino*. For example, *Persechino* involved liability under a strict liability Connecticut state "dog bite" statute. Furthermore, the strict liability distinction regarding the judgment in *Persechino* was important since "neither knowledge, intent, willfulness nor maliciousness factored into the Judgment" on the previously litigated dog bite claim. *Id.* at 5. As such, the *Persechino* court reasoned, an

essential element of a determination of dischargeability under § 523(a)(6), namely "willful and malicious injury" was not present in the prior state action and therefore the issues between the suits in *Persechino* were not identical.

However, in this case, the elements of both "willful" and "malicious" injury were both present and actually and necessarily litigated in the Superior Court and decided in the Superior Court Decision.  Because the identity of issues between the claims decided in the Superior Court Decision and this §523(a)(6) claim are present, the application of collateral estoppel in this case is appropriate.

### ii. Whether "Willful Injury" Was Actually and Necessarily Litigated

The United States Supreme Court has stated that "willful" as applied in §523(a)(6) means "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

With regard to whether the issue of "willful injury" was actually litigated in the Superior Court, the court concludes that it was.  The record demonstrates that in connection with the CUPTA claim, the Connecticut Superior Court explicitly held "[b]ut the eleventh hour communication – oops, there seems to have been a misunderstanding – ensured the worst possible outcome.  This was not bait-and-switch; it was bait (period), with no conceivable end-game other than a total disaster such as ensured.".  Superior Court Decision at 25.  Furthermore, the Superior Court awarded punitive damages in connection the judgment on the CUTPA claim, stating "[t]he court has little difficulty in concluding that the conduct of the defendants, in dealing with the plaintiff, was unethical, immoral, unscrupulous and likely to cause substantial injury to the defendant's customers..." *Id*. at 26.

Although it did not label the particular conduct as "willfulness", the Connecticut Superior Court nonetheless addressed the components of "willfulness" consistent with that term's meaning under 11 U.S.C. § 523(a)(6). As to whether the "willfulness" issue was necessarily litigated, the Court recognizes that as a matter of law, the Superior Court decision must be a binding decision and finds that it is. Accordingly, even while interpreting matters in a light most favorable to the non-moving party, the Court concludes that the element of "willful injury" by the Defendant was actually and necessarily decided in the Superior Court Action.

### iii. Whether "Malicious Injury" was Actually and Necessarily Litigated

As recently noted in this district, "[t]he 'malice' requisite of § 523(a)(6) is distinct from the 'wil[l]fulness' element and the two elements cannot be 'lumped' together." *Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 749 (Bankr. D. Conn. 2014). Specifically, in order for a "willful" injury to also be considered "malicious," it must "be wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will . . . . Malice may be implied 'by the acts and conduct of the debtor in the context of [the] surrounding circumstances.'" *Id.*, quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (ellipses and alteration in original). Additionally *Delaney* further notes, "[m]alice may also be implied when 'anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.'" 504 B.R. at 749, quoting *Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 132 (Bankr. E.D.N.Y. 2007) (internal quotations and citations omitted).

With regard to whether the issue of "malicious injury" was actually litigated in the Superior Court Action, the Court concludes that it was. As was true with the "willfulness" element discussed above, the Connecticut Superior Court found that the conduct of the

Defendant and his brother were unfair and deceptive trade practices and entered a judgment on the Plaintiff's CUTPA claim against both of them.  The Superior Court held that the Defendant and his brother "…lacked candor in multiple respects…" and "[l]ong before actually notifying the plaintiff, defendants knew that there was no possibility of timely delivery, probably the most important element of the contract from plaintiff's perspective, and that importance was (or should have been) known/apparent to defendants". *Id*. at 24.  The Superior Court Decision also found that as soon as the check was received from the Plaintiff, the Defendant and his brother spent the money on ongoing and overdue business and family expenses. *Id*. at 4 and 8.  The Superior Court Decision demonstrates the issue of "malicious injury" was necessarily litigated.

The Court concludes that for purposes of § 523(a)(6), the issue of "malicious injury" was actually and necessarily litigated in the Superior Court Action and is given preclusive effect. All the essential elements of a cause of action for nondischargeability under 11 U.S.C. § 523(a)(6) were found by a preponderance of the evidence in the Superior Court Action, and there are no genuine issues of material fact to be tried as to the § 523(a)(6) claim in this adversary proceeding.  The Plaintiff is therefore entitled as a matter of law to a determination that the debt owed in connection with Count Two of the Complaint is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

### D. The Preclusive Effect of the Superior Court Decision on the Defendant's Motion for Summary Judgment

The Defendant asserts that under collateral estoppel principles, summary judgment should enter in his favor on the Count One § 523(a)(2)(A) cause of action.  In support of his claim, the Defendant argues that the Superior Court found that the Defendant and his brother did not commit fraud/misrepresentation in the inducement when the contract was entered into between the parties.  Superior Court Decision at 14.  Because the Court has given preclusive

11

effect to the Superior Court Decision, and because a successful claim under § 523(a)(2)(A) requires a misrepresentation or fraud to occur at the time the debt was obtained, the Defendant is correct that there is no genuine issue of material fact to be tried with regard to the § 523(a)(2)(A) claim. Therefore, summary judgment will enter in favor of the Defendant with regard to Count One of the Complaint.

As set forth in detail above, the Court granted summary judgment on Count Two of the Complaint in favor of the Plaintiff. Accordingly, the Defendant's motion for summary judgment is denied as to Count Two of the Complaint.

## VI.  Conclusion

For the reasons set forth above, the Plaintiff's motion for summary judgment as to Count Two of the Complaint is **GRANTED** and the Plaintiff's debt is **NONDISCHARGABLE** pursuant to 11 U.S.C. § 523(a)(6).

The Defendant's Motion for Summary Judgment is **GRANTED** as to Count One of the Complaint and **DENIED** as to Count Two of the Complaint.

Judgment shall enter in favor of the Plaintiff on Count Two of the Complaint and judgment shall enter in favor of the Defendant on Count One of the Complaint.

Dated at Bridgeport, Connecticut this 30th day of March, 2018.

*Julie A. Manning*
Chief United States Bankruptcy Judge
District of Connecticut